**United States District Court**
For the Northern District of California

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE NORTHERN DISTRICT OF CALIFORNIA

3

4    REGONALD D. PHILLIPS,            )   No. C 04-2975 CW (PR)
                                      )
5              Petitioner,            )
                                      )
6        v.                           )   ORDER DENYING PETITION FOR WRIT
                                      )   OF HABEAS CORPUS
7    JOE MCGRATH, Warden,             )
                                      )
8              Respondent.            )
     _____ )
9

10                      INTRODUCTION

11       Petitioner Regonald D. Phillips, a state prisoner incarcerated

12   at Pelican Bay State Prison, filed this <u>pro se</u> petition for a writ

13   of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the

14   execution of his sentence.  After denying Respondent's motion to

15   dismiss the petition, the Court ordered Respondent to show cause

16   why the petition should not be granted.  Respondent has filed an

17   answer to the petition and a memorandum of points and authorities

18   and exhibits in support thereof.  Petitioner has filed a traverse

19   to the answer and exhibits in support thereof.

20       Having considered all of the papers filed by the parties, the

21   Court DENIES the petition for a writ of habeas corpus on all

22   claims.

23                      BACKGROUND

24   I.   Procedural Background

25       Petitioner was convicted of robbery and false imprisonment on

26   March 26, 1992.  He was sentenced to twenty years and four months

27   in state prison.  On appeal, the convictions were affirmed,

28   but the abstract of judgment was corrected to reflect a sentence of

seventeen years and eight months.  (Resp't Ex. A, Abstract of Judgment - Prison Commitment.)  Petitioner does not challenge the validity of his underlying conviction or sentence.  Rather, he challenges the execution of his sentence, alleging that prison officials have miscalculated his Earliest Possible Release Date (EPRD) (docket no. 1).

In an Order dated November 22, 2004, the Court liberally construed Petitioner's federal claim as one "that state prison officials have computed the time credits to which he is entitled improperly, resulting in the miscalculation of his release date and him being held beyond the expiration of his sentence" (docket no. 6).  The Court directed Respondent to show cause why relief should not be granted.

On December 12, 2004, Respondent filed a motion to dismiss the petition on the grounds that:  (1) Petitioner had failed to exhaust his state remedies; (2) the petition was barred by the statute of limitations; and (3) the petition failed to allege sufficient facts to state a claim upon which relief may be granted (docket no. 7).[1] On January 10, 2005, Petitioner filed an opposition to the motion to dismiss (docket no. 10).  On August 24, 2005, the Court denied Respondent's motion to dismiss (docket no. 11).  The Court found that Petitioner stated cognizable claims for relief based on:

(1) his allegations that he did not receive accurate

---

[1]  Respondent's answer re-alleges the following assertions: (1) the petition is time-barred under the one-year statute of limitations for federal habeas corpus petitions and (2) the petition fails to allege sufficient facts to state a claim upon which relief may be granted.  These allegations have already been addressed in the Court's Order Denying Motion to Dismiss dated August 24, 2005 (docket no. 11).

United States District Court
For the Northern District of California

credits for a twenty-eight month period during which he worked and during his periods of SHU confinement from 1992-1995, in 1996 and in 2001; (2) the facts addressed by the Director's Level Review decisions issued on May 15, 1996,[2] February 21, 1997, and June 27, 2002; and (3) the Computation Review Hearings of January 13, 1998, and March 15, 2002, and any subsequent related administrative appeals and State habeas petitions.

(Aug. 24, 2005 Order at 6-7 [footnote added].)  The Court ordered

Respondent to respond to the petition and requested Respondent's

"assistance in providing a clear and concise summary of the

relevant facts and calculations for all concerned." (Id. at 7.)

On December 13, 2005, Respondent filed an answer (docket no. 18).

On January 11, 2006, Petitioner filed a traverse to the answer

(docket no. 20).

II.  Applicable Sections of the California Penal Code and
     Title 15 of the California Code of Regulations

     A.  California Penal Code § 2933

     "It is the intent of the legislature that persons convicted of

a crime and sentenced to the state prison under [California Penal

Code] § 1170 serve the entire sentence imposed by the court, except

for a reduction in the time served in the custody of the Director

of Corrections for performance in work, training or education

programs established by the Director of Corrections." (Id.)

Pursuant to California Penal Code § 2933, inmates may participate

in qualifying work, training and educational programs for the

privilege of earning "worktime credit" against their sentences.

Cal. Penal Code § 2933(a).  "For every six months of full-time

---

[2] The record shows that the correct date Petitioner's appeal was denied by the Director's level is May 17, 1996 and not May 15, 1996. (Pet'r Ex. F, Director's Level Appeal Decision, log no. 95-5507, dated May 17, 1996.)

United States District Court
For the Northern District of California

performance in a credit qualifying program, as designated by the director, a prisoner shall be awarded worktime credit reduction from his or her term of confinement of six months." Id. Every prisoner who refuses to accept a full-time, credit-qualifying assignment or who is denied the opportunity to earn worktime credits pursuant to California Penal Code § 2932(a) shall be awarded no worktime credit reduction. Id. Prisoners cannot receive more than six months' credit reduction for any six-month period. Id. With exceptions for the commission of certain violations, inmates who commit disciplinary violations may forfeit earned credits under California Penal Code § 2932 and may seek restoration of credits pursuant to California Penal Code § 2933(c). This section provides that upon application and following completion of the required time period free of disciplinary offenses, an inmate's "forfeited credits eligible for restoration under the regulations for disciplinary offenses . . . shall be restored unless, at a hearing," it is determined that the inmate refused or failed to perform in a credit-qualifying assignment, or "extraordinary circumstances are present that require that credits not be restored." Cal. Penal Code § 2933(c). Extraordinary circumstances are defined in the regulations adopted by the Director of the California Department of Corrections and Rehabilitation (CDCR).[3] Id. Although inmates may appeal the findings through the CDCR review procedure, restoration of credit shall be at the discretion of the director. Id.

---

[3] While the CDCR was previously known as the California Department of Corrections (CDC), the Court will refer to it as the CDCR in addressing the merits of this petition.

4

In essence, a qualifying inmate can earn one day of credit for each day of service. Id. However, California Penal Code § 2933 provides that prisoners have no right to earn worktime credits. "Worktime credit is a privilege, not a right." Cal. Penal Code § 2933(b). Furthermore, California has not created a protected liberty interest in earning credits pursuant to § 2933. See id.; Kalka v. Vasquez, 867 F.2d 546, 547 (9th Cir. 1989) ("§ 2933 does not create a constitutionally protected liberty interest"). California Penal Code § 2933 specifically contemplates that not all inmates will be assigned to a credit-qualifying program. Toussaint v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir. 1986) ("[e]xamination of § 2933 leads to the conclusion that prisoners have no right to earn the one-for-one worktime credits provided by that section"). In fact, prisoners are not entitled automatically to participate in worktime credit programs, People v. Rosaia, 157 Cal. App. 3d 832, 848(1984), and there is no guarantee that work programs will be available. People v. Caruso, 161 Cal. App. 3d 13 (1984).

 B. Title 15, California Code of Regulations §§ 3040, 3044

Title 15, of the California Code of Regulations section 3040 obliges all "able-bodied" prisoners to work and/or obtain an education. California Code Regs. tit. 15, § 3040(a). Thus, all prisoners are placed in a work/training group, designated A-1, A-2, B-1, B-2, and so on. Id. § 3044.

Inmates in work group A-1 are eligible for full-time educational and work assignments, while those in work group A-2 are deemed "willing but unable to perform" a full-time assignment, and either are put on a waiting list for a full-time assignment or are waiting for an adverse transfer to a different institution. Id.

**United States District Court**
For the Northern District of California

§ 3044(b)(2), (3).   Inmates in work group A-1 are eligible to earn California Penal Code § 2933 worktime credits, i.e., one day credit for each day assigned to this work group.   Id. § 3044(b)(2). Inmates in work group A-2 are eligible to receive half-time credit, i.e., one day credit for every two days the inmate is "willing but unable to perform" a full-time assignment.   Id. § 3044(b)(3).

Inmates in work group C are more commonly referred to as C-status" inmates.   C-status is the CDCR's classification for inmates who fail to comply with or whose conduct interferes with prison program requirements.   Id. § 3044(b)(5)(A), 3044(f).   C-status classification is determined by a classification committee.   Id. § 3044(b)(4).   C-status inmates do not earn work credits.   Id. § 3044(b)(5)(A).   The inmate remains in a zero-credit-earning status until classified for placement in a credit-qualifying work group. Id. § 3044(b)(5)(B).   After being placed on C-status, the inmate can submit a written request to be removed from C-status.   Id. § 3044(b)(5)(B).

Inmates in work groups D-1 and D-2 include those who are assigned to a Security Housing Unit (SHU).   An inmate on D-1 status receives three months credit for each six months served or one day credit for two days served.   Id. § 3044(b)(6).   An inmate on D-2 status who is deemed a program failure while on indeterminate or determinate lockup status, earns zero credit.   Id. § 3044(b)(7). Inmates assigned to a determinate SHU term which includes a forfeiture of credits under California Penal Code § 2933 shall not be placed in a credit-earning assignment during the period of credit forfeiture or 180 days, whichever is less, starting from the date of change in custodial classification.   Id. § 3044(b)(7)(A).

C.    California Penal Code § 2933.6

Included among the documents submitted by Petitioner is an exhibit relating to the calculation of his release date.   The documents show that Petitioner's misconduct comes within the provision of California Penal Code § 2933.6 for the following offenses: assault or battery causing serious bodily injury, California Penal Code § 2933.6(b)(3), and/or assault or battery on a peace officer or other non-prisoner which results in physical injury, id. § 2933.6 (b)(4).

1.    Applicable Subsections

The California Legislature, pursuant to California Penal Code § 2933.6, provides that all inmates who commit certain misconduct listed in subsection(b) are ineligible to earn work credits or good behavior credits while housed in a SHU or an Administrative Security Unit (Ad Seg) for that misconduct.   Cal. Penal Code § 2933.6(a).

This section does not apply if the administrative finding of the misconduct is overturned or if the inmate is criminally prosecuted for the misconduct and is found not guilty.   Prosecution and conviction are not required; rather, an administrative finding will suffice.   Id. § 2933.6(a), (c).

2.    Key Terms from the Calculation Worksheet For California Penal Code § 2933

In response the Court's requests for "assistance in providing a clear and concise summary of the relevant facts and calculations," Respondent has submitted exhibits in the form of samples of Petitioner's credit calculation on a form entitled "Calculation Worksheet For PC Section 2933 (Work Incentive),"

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

showing Pelican Bay State Prison's Correctional Case Records
Manager's analysis of Petitioner's EPRD from the date of his
incarceration.  (Resp't Ex. B, Samples of Calculation Worksheets
for California Penal Code § 2933.6.)

     A California inmate's EPRD and maximum adjusted release date
(MARD) are calculated when he enters prison.  The MARD generally is
determined by figuring the starting date in the CDCR prison system
plus the total prison term imposed minus any pre-prison credits.
The MARD remains the same throughout the inmate's incarceration as
long as he is not convicted of additional crimes resulting in
additional sentences.  From this date, the CDCR subtracts worktime
credits the inmate has earned or is expected to earn in his current
credit-earning status, adds back any worktime credits that have
been denied or lost through disciplinary actions, and subtracts any
denied or lost credits that have been restored.  The result is the
EPRD.

     The EPRD is adjusted throughout the inmate's stay in prison
when various events occur, e.g., when he moves from one credit-
earning level to another, when he loses credits due to a
disciplinary decision, and when lost credits are restored.  The
EPRD does not reflect the exact date that a prisoner is going to be
released.  The EPRD is only a predicted release date because the
EPRD is based on the assumption that the circumstances which
determine term length or credit earning status will not change.
If, however, after the date an EPRD is computed, a prisoner's
credit-earning status changes, credits are lost or restored, or a
new term is received, the EPRD will change.  (See Pet'r Ex. A,
Prison Law Office, Release Date Calculations and Challenging Error

1  in Release Date dated March, 2001.)

2      Unlike the EPRD, an inmate's Current Release Date (CRD) does

3  not take into consideration the probability of earning future

4  credits.  (Id.)  The CRD is obtained by subtracting from the MARD

5  the net total of credits earned in prison up to the day that

6  credits were applied.  Because the CRD takes into account only

7  credits earned to the present and does not consider the probability

8  of an inmate earning credits in the future, it is also not a true

9  release date.

10  III. Factual Background

11      The factual background of each section has been taken from the

12  petition, Respondent's answer, Petitioner's traverse and all

13  attached exhibits.  Petitioner has provided the Court with numerous

14  documents pertaining to the administrative appeals showing that he

15  sought to have his credits restored after his periods of SHU

16  confinement from 1992 through 1995 and in 1996 as well as after his

17  SHU confinement during various periods from 2001 to 2005.  The

18  facts include those addressed by the final level of review of each

19  of his administrative appeals, i.e., the Director's Level Appeal

20  Decision, as well as the results of his Computation Review Hearings

21  and his state habeas petitions.

22      A.   May 17, 1996 Director's Level Appeal Decision

23      A number of the exhibits submitted by Petitioner pertain to a

24  loss of worktime credits from April 8, 1992 to October 9, 1995,

25  when Petitioner was housed in the SHU at High Desert State Prison.[4]

26

27      [4]  The record shows that Petitioner violated Title 15 of the
28  California Code of Regulations § 3005(c) (attempted battery on a peace
    officer) and § 3005(a) (leading a disturbance and/or behavior which

United States District Court
For the Northern District of California

(Pet'r Ex. F, Director's Level Decision, log no. 95-5507, dated May 17, 1996; Resp't Ex. B, Samples of Calculation Worksheets for California Penal Code § 2933.6.)  Before Petitioner entered the SHU on April 8, 1992, his EPRD was projected at 2002.  After his release from the SHU on October 9, 1995, his EPRD was recalculated and projected at 2004.

On December 10, 1995, Petitioner filed a CDCR 602 Inmate/ Parolee Appeals Form (602 appeal),[5] alleging the miscalculation of his 2004 EPRD.  He pursued the appeal through the various levels of administrative review.[6]

On February 2, 1996, the CDCR provided Petitioner with a Second Level Appeal Response to his 602 appeal.  Petitioner's appeal was denied on the ground that he was assessed D-2 status at zero-earning-credit and "the credit earned from 4/8/92 to 10/9/95 was only 118 days versus approximately 915 days had [Petitioner] not entered into the SHU at D2 status." (Pet'r Ex. F, Second Level Appeal Response, log no. 95-5507, dated Feb. 21, 1996.)  Petitioner appealed this decision to the Director's level.

On May 17, 1996, Petitioner's appeal was denied at the

---

could lead to violence) in 1993, and he also violated Title 15 of the California Code of Regulations § 3014 (delaying lockup) and § 3005(c) (threat to assault staff) in 1994.  (Pet'r Ex. F, Director's Level Decision, log no. 95-5507, dated May 17, 1996.)

[5] A 602 appeal form is used by inmates and parolees to protest the conduct and/or decisions of correctional employees or officials.

[6] California prison regulations provide administrative procedures in the form of one informal and three formal levels of review to address a prisoner's claim.  See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7.  Administrative procedures generally are exhausted once the prisoner has received a Director's Level Appeal Decision, which is the decision at the third and final level of review.  Cal. Code Regs. tit. 15, § 3084.5.

Director's level (Pet'r Ex. F, Director's Level Appeal Decision, log no. 95-5507, dated May 17, 1996.)  The issue addressed was whether Petitioner's 2004 EPRD was "incorrectly calculated" because he claimed "the credit losses [were] too high."  (Id.)  The decision, which was consistent with the Second Level Appeal Response to Petitioner's 602 appeal, stated:

> The institution takes the position that appellant stated to the records manager that he did not understand why his release date prior to his entering Secure Housing Unit (SHU) was in 2002 and it is now in 2004.  It was explained to the appellant that his SHU term was approximately four years with D-2 or zero earning status. The pre-SHU calculation took into consideration the projected earnings that appellant could have made prior to his entering the SHU.  Because of the long D-2/zero earning status, appellant earned only 118 days from April 8, 1992 to October 9, 1995, rather than the approximately 915 days he could have earned had he not been placed into the SHU.  Appellant lost approximately 797 days off of his pre-SHU EPRD calculation, resulting in a release year of 2004.  Appellant's current EPRD, on 1/3 earning status, is April 19, 2004.  This date will change once the appellant is assigned to a job.  Credits lost based upon SHU term cannot be restored.

(Id.)  Appeals Examiner C. Dahlberg denied the appeal concluding:

> The documentation and arguments presented are persuasive that appellant's four year SHU term has affected his release date, as calculated by records staff, by approximately 797 days.  The time not credited due to appellant's placement in SHU cannot be restored pursuant to PC 2933.6.  When appellant receives an assignment, his EPRD will be recalculated; that release date will be correct so long as appellant remains in Work Group A-1 and is not sentenced to another SHU term.

(Id.)

B.   February 21, 1997 Director's Level Appeal Decision

In 1996, Petitioner was housed in the SHU for committing a

United States District Court
For the Northern District of California

CDC-115 rule violation.[7]  He filed a 602 appeal alleging miscalculation of his goodtime/worktime credits after his 1996 SHU confinement.

On November 22, 1996, CDCR officials provided Petitioner with a Second Level Appeal Response to his allegation of miscalculation, which referred to Petitioner's requests for an <u>Olsen</u> Review, which is an administrative procedure to review his central file, and for a computation review hearing in accordance with <u>Haygood v. Younger</u>, 769 F.2d 1350, 1354-58 (9th Cir. 1985).  (Pet'r Ex. F, Second Level Appeal Response, log no. 96-07054, dated November 22, 1996.) According to the response, Petitioner's request for an <u>Olsen</u> Review was granted on September 13, 1996.  (<u>Id.</u>)  Petitioner was therefore provided an opportunity to review his central file with Correctional Counselor S. Cook.  However, Petitioner's request for a <u>Haygood</u> hearing was denied because he failed to "specifically cite the area where [his] time computation [was] in error."  (<u>Id.</u>) His appeal was denied at the second level because he "failed to provide any evidence of miscalculation of [his] time."  (<u>Id.</u>)

On February 21, 1997, Petitioner was provided with a Director's Level Appeal Decision.  (Pet'r Ex. F, Director's Level Appeal Decision, log no. 96-07054, dated Feb. 21, 1997.)  The issue addressed was whether to grant Petitioner's request to recalculate his EPRD and/or his request for a <u>Haygood</u> hearing.  (<u>Id.</u>) Petitioner was granted a <u>Haygood</u> hearing based on findings that:

---

[7] A CDC-115 Rule Violation Report is the form used by the CDCR to record a prisoner's rule violation, to serve notice of the violation upon the prisoner, and to record the findings of any subsequent disciplinary hearing.  However, the record does not contain the report pertaining to Petitioner's 1996 CDC-115 rule violation.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

> Inmate/parolees who are subject to the jurisdiction of the Department of Corrections have a right to a Computation Review Hearing when they believe there is an error in the computation of a term of confinement or period of parole based upon documentation in the record and that such error or calculation adversely affects their term of confinement or period of parole.

(Id.)

Petitioner's file was audited on April 9, 1997.  (Pet'r Ex. I, Memorandum from Associate Warden V. W. Woods dated Dec. 18, 1997.)

On July 29, 1997, Petitioner appeared before the Institutional Classification Committee (ICC).[8]  The ICC nullified several of his SHU terms and restored a total of 180 days.  The ICC memorandum stated:

> Inmate Phillips appeared before B-FAC ICC this date for a WG Review Clarification.  Committee notes S [Petitioner] received CDC 115 dated 1/22/93, which was a Div. A1 offense for Assault on Staff.  Zero Credit loss was assessed due to time constraints not being met.
>
> Committee Action: Per AB 93-7 page 11, Section 10 and page 13 Section 18, committee elects to Administratively grant D1 WG from 1/22/93 to 10/22/93.  CDC 115, for threatening staff was dismissed per 2nd level appeal log #96-07361.  Inmate was placed in AD/SEG on 5/26/94 pending adjudication of this RVR.  Committee elects to administratively grant A2 WG from 5/26/94 to 8/11/94.  S was placed in AD/SEG on 6/19/96 and released to GP on 6/20/1996.  The CDC referenced in this placement is dated 6/19/96 for Threatening Staff, which was dismissed.  Inmate was A1-A at the time of AD SEG placement, therefore committee elects to administratively grant 'S'

---

[8] The ICC establishes a prisoner in an institution by making sure he understands what is expected of him, what programs are available, assigning a custody designation and placing the prisoner in a work/privilege group.  Cal. Code Regs. tit. 15, § 3376(d).  The Unit Classification Committee (UCC) reviews a prisoner's situation annually and makes adjustments where necessary.  Cal. Code Regs. tit. 15, § 3376(d)(2).  The Institution and Facility Classification Committee (IFCC) is more specialized, accepting referrals from other committees, reviewing prisoners' requests and changing a prisoner's work/privilege group if there are circumstances warranting such change.  Cal. Code Regs. tit. 15, § 3376(d)(3).

13

United States District Court
For the Northern District of California

time from 6/19/96 through 6/20/96.  Committee notes that
when 'S' was released from AD/SEG on 6/20/96, inmate was
made A2-B when the WG should have been restored back to
A1.  Inmate remained at D2 until reassigned on 7/12/96,
therefore, committee elects to restore WG A1 effective
6/21/96 to 7/11/96.

(Pet'r Ex. H, CDC 128-G dated July 29, 1997.)

Petitioner's central file was audited again on December 8,
1997, and his EPRD was adjusted to May 11, 2002.  (Pet'r Ex. I,
Memorandum from Associate Warden V. W. Woods dated Dec. 18, 1997.)

C.    January 13, 1998 Computation Review Hearing

On January 13, 1998, Petitioner's Computation Review Hearing
took place, and his revised EPRD of May 11, 2002 was found to be
correct based on credits applied through November 25, 1997.  (Pet'r
Ex. I, Computation Review Hearing dated January 13, 1998.)

D.    State Habeas Corpus Petitions

Petitioner then pursued state habeas corpus relief.  A review
of his state habeas petitions shows allegations almost identical to
those in the present petition, including assertions that over a
period of almost twelve years Petitioner had worked for twenty-
eight months but did not receive adequate credits for that period,
that his periods of SHU confinement from 1992 through 1995 and in
1996 resulted in erroneous credit loss, and that over time he has
lost more than 1,500 credits which should have been restored.  On
March 5, 2003, the California Court of Appeal denied his petition
summarily without citation, and on January 22, 2004, the California
Supreme Court denied his petition summarily, citing In re Swain, 34

14

Cal. 2d 300, 304 (1949), and In re Clark, 5 Cal. 4th 750 (1993).[9]

Phillips [Regonald D.] on H.C., No. S115313, (Cal. Jan. 22, 2004).

E.    March 15, 2002 Commutation Review Hearing and June 27, 2002 Director's Level Appeal Decision

In a letter dated June 1, 2001, the CDCR responded to Petitioner's allegation that he is "being retained past [his] EPRD," and other alleged "discrepancies and errors of calculation" for 1997 to 2001.  (Pet'r, Ex. I, Letter from Correctional Administrator Mark Shepherd dated June 1, 2001.)  The letter appears to correspond to Petitioner's allegations that he did not receive accurate credits for the periods of SHU confinement from 1992 through 1995, in 1996 and in 2001.  Petitioner's EPRD was

_____

[9] Under California law, a denial of a habeas petition with a citation to In re Swain indicates that a petitioner has failed to state his claim with sufficient particularity for the state court to examine the merits of the claim and has failed to explain the reasons for any delay in filing his petition.  See In re Swain, 34 Cal. 2d at 304.  The Ninth Circuit treats a citation to In re Swain as standing for a denial on procedural grounds which can be cured in a renewed state petition.  See Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986).  However, the state court's citation to In re Swain may not establish that a petitioner has failed to exhaust if the petitioner can show that the claims cannot be alleged with any greater particularity, see id. at 1319-20, as is the case here.

It is not clear whether a citation to In re Clark indicates here that the California Supreme Court denied Petitioner's claim on the merits, as untimely, or for substantial delay without good cause.  In Ranieri v. Terhune, 366 F. Supp. 2d 934 (C.D. Cal. 2005), the California state court found that a citation to In re Clark constituted an adequate state procedural bar when the petitioner raised his claims in a state habeas petition two years and nine months after sentencing.  If the petitioner cannot justify the delay, then a court may reach the merits only if the petitioner asserts facts demonstrating that a "fundamental miscarriage of justice occurred as a result of the proceedings leading to conviction and/or sentence." In re Clark, 5 Cal. 4th at 797.  Here, Respondent's allegation that the petition is untimely has already been addressed in the Court's Order Denying Motion to Dismiss dated August 24, 2005 (docket no. 11). Because the Court determined that the petition is not time-barred, Petitioner's claims will not be dismissed based on the state court's citation to In re Clark.

United States District Court
For the Northern District of California

recalculated and assessed at September 3, 2006.  (Id.)

On January 3, 2002 Petitioner sought relief through administrative channels by filing another 602 appeal.  In an informal level decision dated February 4, 2002, the reviewing officer noted that Petitioner "recently had 316 days restored," and that certain disciplinary charges had been dismissed.  The First Formal Level of Review was waived.  (Pet'r Ex. K, Second Level Appeal Response, log no. 02-00396, dated Mar. 20, 2002.)

On March 15, 2002, Petitioner received a Computation Review Hearing conducted by D. Sackett, Case Records Manager.  (Pet'r Ex. K, Director's Level Appeal Decision, log no. 02-00396, dated June 27, 2002.)  During that hearing, it was "determined that his calculation was computed correctly and there was no error in his calculated EPRD."  (Id.)

On March 20, 2002, Petitioner received a Second Level Appeal Response to the claim that he did not receive accurate credits.  (Pet'r Ex. K, Second Level Appeal Response, log no. D-02-00396, dated March 20, 2002.)  According to the response, Petitioner had received 1,627 days credit losses, a total of 586 days of credit restorations, and was assessed a D-2, zero earning status.  It appears from the record that Petitioner was assigned to SHU in 2001 for violating California Code of Regulation § 3005(c) (attempted battery on a peace officer).  (Pet'r Ex. K, Classification Credit Restoration dated October 11, 2001.)  As a result, Petitioner was assessed at D-2 zero earning status and scheduled to complete his SHU/D-2 status on December 24, 2002.  (Id.)  This SHU confinement established a projected release date of December 2, 2005.  (Pet'r Ex. K, Second Level Appeal Decision, log no. 02-00396, dated Mar.

20, 2002.)

On June 27, 2002, the Director's Level Appeal Decision addressed Petitioner's claim that his EPRD date had been miscalculated.  The Chief Inmate Appeals Officer noted that the Case Records Manager reviewed all the documentation from Petitioner's central file and determined that the calculation of his EPRD was computed correctly.  (Id.)  The reviewing officer denied the appeal based on findings that:

> [T]he appellant had the opportunity to present further documentation and verbal presentation at the Hearing. The appellant was provided with copies of the appellant's time calculation upon which the EPRD is based.  The final determination at the Hearing was the appellant's time calculation was correct and did not require the changes he is seeking.  Based upon the documentation, it is determined that the institution's actions in this mater were proper and in compliance with California Code of Regulations Title 15, Section (CCR) 3084.7(h).

(Id.)  Petitioner was informed that his release date calculation was correct, and that the administrative remedies available to him within the CDCR had been exhausted.  (Id.)

F.    October 4, 2005 Computation Review Hearing and October 13, 2005 Second Level Appeal Decision[10]

On January 18, 2005, Petitioner requested a Computation Hearing to be conducted by the Chief of Classification Services in Sacramento.  (Pet'r Ex. L, Inmate/Parolee Appeal Form dated January 18, 2005.)  On February 9, 2005, Petitioner's appeal was screened out.  (Pet'r Ex. L, Inmate/Parolee Disciplinary Appeals Screening Form dated February 9, 2005.)  The reviewing officer, D. W.

---

[10]  There is nothing in the record that indicates whether Petitioner appealed to the Director's level, and neither party has informed the Court if there exists a Director's Level Appeal Decision for Petitioner's 602 appeal, log no. 05-02301.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Bradbury, stated:

> Your date was most recently updated 11/24/04, and you were
> notified via Legal Summary Sheet.  The other issues you
> raise regarding credits from your initial incarceration
> was reviewed in your prior Computation Review.  You've not
> provided a credible explanation for exceeding time limits.

(Id.)

On March 15, 2005, Petitioner filed a new 602 appeal
requesting a "prompt Haygood Hearing" to address "continuous,
intentional, miscalculation and miscomputation of his sentence."
(Pet'r Ex. L, 602 appeal, log no. 05-02301, dated March 15, 2005.)
It appears from the record that Petitioner's 602 appeal relates to
two separate CDC-115 disciplinary violations on May 5, 2004 and May
25, 2004 for staff assaults.  Petitioner was confined in the SHU at
D-2 status for purposes of worktime credits.  (Id.)  Additional
rule violations caused credit losses of thirty days each on August
4, 2004, January 27, 2005, and July 27, 2005.  As a result of these
violations, Petitioner suffered a total credit loss of 1,927 days.
(Id.)  His EPRD was calculated at August 12, 2007.  (Id.)

On March 22, 2005, an informal review was conducted.  Case
Record Administrator, C. Hodge wrote:

> After a thorough review of your file, I have found that
> your sentence by the court and the calculations to be
> correct.  You received a Haygood Hearing on March 1,
> 2002.
>
> . . . It is unclear to us what you think is incorrect
> about your term.  You have included so much additional
> verbiage that it is difficult to decipher what you are
> appealing.  If you will submit a simple question stating
> what you believe has been incorrectly calculated we will
> be a happy to answer it.
>
> Look at the attached copy of your calculation.  Look at
> the print-out of your losses and restorations.  You will
> see that CDC has appropriately applied the information we

18

> received on 128-g chronos[11] and CDC-115s.  There has been
> no attempt to apply losses that have not been earned.  If
> you need to see your file to check these losses or
> chronos, please contact your counselor and ask to review
> your file.

(Pet'r Ex. L, Informal Review by C. Hodge dated Mar. 22, 2005.)

On October 4, 2005, Petitioner appealed to the CDCR for a computation of his EPRD.  (Pet'r Ex. M, Computation Review Hearing Decision, log no. 05-02301, dated Oct. 4, 2005.)  Finding no evidence to support the allegation that his release date had been miscalculated, the reviewing officer denied the appeal and issued his Computation Review Hearing Decision, which is equivalent to the decision at the first level of review.  (Id.)  Petitioner's CRD was set at September 28, 2007.  (Id.)

On October 13, 2005, Petitioner received a Second Level Appeal Response to his appeal.  The warden of Pelican Bay State Prison stated:

> The inmate believes his EPRD has been calculated
> incorrectly because he has never been given any of the
> credit he is due, from being given more time than the
> court ordered and not giving him all of the pre-sentence
> credit ordered by the court to deliberately and
> maliciously miscalculating his time to a point where he
> has already served five and one-half years more than that
> which was sentenced by the court.  He wants an immediate
> release and an end to this absurd, blatant malign, and
> intentional miscarriage of justice.

(Pet'r Ex. M, Second Level Appeal Response, log no. 05-02301, dated Oct. 13, 2005.)  According to the response, Petitioner's Computation Review Hearing on March 15, 2002 was not appealed.

---

[11] "Chronos" in this context appears to refer to "Chronological History," which is a document "prepared for each inmate, upon which significant dates and commitment information affecting the inmate are logged."  Cal. Code Regs. tit. 15, § 3000.

(Id.)  Because this prior decision was not appealed to the next level, the review began with the last credit calculation, at which time, Petitioner's EPRD was assessed at December 2, 2005.  (Id.) Petitioner stated that he did not want to continue the interview if they were "not going to go all the way back to the beginning of his term."  (Id.)  Finding no evidence to support Petitioner's allegations that his release date had been miscalculated or that he was five and one-half years overdue for release, the appeal was denied.  (Id.)  The CRD was reviewed and verified as September 28, 2007.  (Id.)

The record shows that Petitioner's EPRD is currently set at August 12, 2007.[12]  (Resp't Ex. B, Sample no. 55, Calculation Worksheet for California Penal Code § 2933.6, dated Nov. 23. 2005.)

DISCUSSION

I.   Exhaustion

It is well settled that "federal habeas relief is not available unless the [petitioner] has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A)).  Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c);

---

[12] The parties have not submitted any further exhibits that reflect that Petitioner's EPRD has changed.

United States District Court
For the Northern District of California

Granberry v. Greer, 481 U.S. 129, 133-34 (1987).  The exhaustion requirement is not jurisdictional, but rather a matter of comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations.  See id.; Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982).  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis.  Duncan v. Henry, 513 U.S. 364, 365 (1995) (legal basis); Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992) (factual basis).

The Court finds that Petitioner properly exhausted his due process claim based on his allegations that he did not receive accurate credits during his periods of SHU confinement from 1992 through 1995 and in 1996.  See Duncan, 513 U.S. at 365.  However the record does not show that Petitioner presented the highest state court with the factual and legal basis for his due process claim based on his allegations that he did not receive accurate credits for his SHU confinement during various periods from 2001 to 2005.

Because the petition contains additional factual allegations not raised in the state court, it is arguably unexhausted.  The Court, however, will consider the time credit calculations resulting from the new violations.  The new factual allegations are not wholly different from Petitioner's original allegations that the CDCR incorrectly calculated his EPRD from the date of his incarceration.  Even if the claim were unexhausted due to the new

21

factual allegations, the Court will not dismiss the petition without prejudice pending exhaustion of the claim. The Court may deny a petition on the merits even if it is unexhausted. See 28 U.S.C. § 2254(b)(2). Therefore, judicial efficiency and the administration of justice will be best served by the Court addressing the merits of Petitioner's due process claim that he did not receive accurate credits for his SHU confinement during various periods from 2001 to 2005.

II.  Legal Standard

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." William v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle

United States District Court
For the Northern District of California

from the [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413. The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the relevant state court decision.  Id. at 412.

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision.  Lajoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  It also looks to any lower court decision examined or adopted by the highest state court to address the merits.  See Williams v. Rhoades, 354 F.3d 1101, 1106 (9th Cir. 2004) (because state appellate court examined and adopted some of the trial court's reasoning, the trial court's ruling is also relevant).

Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Greene v. Lambert, 288 F.3d 1081, 1088 (9th Cir. 2002).  When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law.  Himes, 336 F.3d at 853; accord Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004).

United States District Court
For the Northern District of California

23

United States District Court
For the Northern District of California

III.  Due Process Claim

A.    Applicable Legal Standard

In order to state a due process claim, a petition must show that a constitutionally protected liberty interest is implicated. Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 844 (9th Cir. 1985).  If a state prisoner's time credits have been improperly computed, he may have a claim for denial of due process. See Haygood v. Younger, 769 F.2d 1350 (9th Cir. 1985) (en banc), cert. denied, 478 U.S. 1020 (1986).  Any deprivation of time credits allegedly impacting a prisoner's sentence generally may be remedied only by way of habeas corpus.  See Young v. Kenny, 907 F.2d 874, 876-78 (9th Cir. 1989), cert. denied, 498 U.S. 1126 (1991); Toussaint, 801 F.2d at 1096 n.14.  Prisoners retain their right to due process subject to the restrictions imposed by the nature of the penal system.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The Due Process Clause requires certain minimum procedural protections if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, and (2) the liberty in question is one of "real substance."  See Sandin v. Conner, 515 U.S. 472, 477-87 (1995); Wolff, 418 U.S. at 556-572.

A state may create a constitutionally protected liberty interest if it establishes regulatory measures that impose substantive limitations on the exercise of official discretion. Hewitt v. Helms, 459 U.S. 460, 470-71 (1983).  "[A] State creates a protected liberty interest by placing substantive limitations on

24

United States District Court
For the Northern District of California

official discretion." <u>Olim v. Wakinekona</u>, 461 U.S. 238, 249

(1983).  In <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454

(1989), for example, the Court noted that a state most commonly

fetters official discretion by a two-step process.  First, the

state establishes "substantive predicates" to govern official

decisionmaking.  These are "particularized standards or criteria to

guide the [s]tate's decisionmakers " <u>Id.</u> at 461.  Next, the state

requires, "in explicitly mandatory language," that if the

substantive predicates are met, a particular outcome must follow.

<u>See id.</u> at 461-64.  Procedural guidelines alone are not sufficient

to create a protected interest.  <u>See</u> <u>Smith v. Noonan</u>, 992 F.2d 987,

989 (9th Cir. 1993) (provision that merely raises procedural

requirements without substantive predicates, even if mandatory, not

enough).  Only where they are combined with "substantive

predicates" will an interest entitled to protection by the Due

Process Clause be found.  <u>Hewitt</u>, 459 U.S. at 472-33.

  B. Analysis

   1. Miscalculation of EPRD Claim

  When Petitioner filed the present petition, he argued that he

did not understand why he was still being held after serving

"thirteen years and five months on a seventeen years and eight

month sentence" because he should have earned worktime/goodtime

credits pursuant to California Penal Code § 2933.  (Pet. at 2.)  It

is evident that Petitioner does not understand the correct manner

to calculate his EPRD.  Therefore, his due process claim based on

the allegations that prison officials have miscalculated his EPRD

fails as outlined below.

United States District Court
For the Northern District of California

a.   EPRD After SHU Confinement from 1992 through 1995

(1)   Background

Petitioner contends that calculation of his goodtime/worktime credits after his SHU confinement from 1992 through 1995 was improper because it resulted in an EPRD that causes him to be held beyond the termination of his sentence.  (Pet. at 8.)  In support of the petition, he cites Title 15 of the California Code of Regulations § 3044(a), (b) for the proposition that he earned day-for-day worktime credits under California Penal Code § 2933 and should be awarded two days credit for each day of qualifying performance.  (Id.)

(2)   Analysis

Instead of specifying miscalculations relating to his EPRD after his SHU confinement from 1992 through 1995, Petitioner offers a calculation entitled, "Simplified Version of Time Computation," which concludes that "10 years and 2 months" is the time that he "would have had to serve in C.D.C.R." (Traverse at 13-14.)  He argues that, as of January 5, 2006, the date he signed his traverse, he had served fourteen years and five months; therefore, he "should have been released many years ago."  (Id.)  However, Petitioner's attempt to distort the CDCR's method of calculating his EPRD is unavailing.  His method of computation fails to take into consideration the general proposition that disciplinary credit losses (e.g., credits lost after his SHU confinement from 1992 through 1995) can be applied against future credit that will be earned as well as credit that has already been earned.  See Cal.

26

Penal Code §§ 2932, 2933.

Unlike Petitioner's "simplified version," the CDCR Calculation Worksheets use a fourteen-step formula to calculate the new EPRD pursuant to California Penal Code § 2933.6.  The CDCR's formula takes into account the credits earned, lost and restored, by putting them into the equation before projecting the credits the inmate might receive in the future if he remains at his current credit-earning level. (See Resp't Ex. B, Calculation Worksheets ¶¶ 6-11; Pet'r Ex. A, Prison Law Office, Release Date Calculations and Challenging Errors in Release Date dated March, 2001.)  When a particular number of time credits is forfeited, the EPRD does not increase day-for-day by the same number.  Similarly, when a particular number of time credits is restored, the EPRD does not decrease day-for-day by the same number.  (Id.)  This is because the days of credits are put in the formula before the projection for future credit-earning is made.  That is, the CDCR subtracts the net number of credits earned from the MARD to reach a CRD and the EPRD by projecting how many days of credit will be earned in the future if the inmate's status does not change.  (See id. ¶¶ 12-14.)  In other words, from the MARD date, the CDCR subtracts worktime credits the inmate has earned or is expected to earn in his current credit-earning status, adds back any worktime credits that have been denied or lost through disciplinary actions, and subtracts any denied or lost credits that have been restored.

Here, the Court finds that Petitioner fails to show that he did not receive accurate credits during his SHU confinement from 1992 through 1995.  Based on a careful examination of the record,

the Court has gleaned the reason for the change in Petitioner's EPRD from 2002 to 2004 after his SHU confinement from 1992 through 1995. Petitioner's Legal Status Summary (LSS)[13] form for September 16, 1992 indicates that his EPRD was set at January 24, 2002 based on credits applied through September, 1992. (Pet'r Ex. D.) The Calculation Worksheets also show that Petitioner suffered a projected credit lost of 259 days between May 31, 1992 and May 31, 1994 due to changes in his classification status from work group A-1 to D-2. (Resp't Ex. B.) Additionally, the Chronological History worksheets submitted by Petitioner further illustrate that by February 10, 1995, he was classified as a D-2 status inmate with an EPRD of 2004. (Pet'r Ex. C, Chronological History: 1992 to 2004.) Petitioner's exhibits, specifically the relevant LSS forms, do not show that his EPRD of 2004 was incorrect.

Petitioner was also provided with a hearing at which he was afforded an opportunity to prove his allegations regarding the CDCR's improper computation of his credits after his SHU confinement from 1992 through 1995. A review of the record indicates that Petitioner had no evidence to support his

---

[13] When a prisoner arrives in the CDCR system, a CDCR case records specialist reviews his abstract of judgment as well as other sentencing documents and enters the information into the CDCR computer system. A computer print-out called the "Legal Status Summary" is generated. In the present case, Petitioner's LSS form had a computer-generated message on it that his sentence was "discrepant." Discrepant cases are those cases in which errors in sentencing are detected from the data entered into the OBIS (prison database) or some needed information is missing or unclear. (Pet'r Ex. A, Prison Law Office, Release Date Calculations and Challenging Errors in Release Date dated March, 2001.) Petitioner's LSS forms also include a handwritten notation stating that the discrepancy means that his LSS forms contained errors in his sentencing.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

allegations or to counter the evidence that his projected EPRD of 2004 was based on the 118 days of credits earned, rather than the approximately 915 days he would have earned had he not entered the SHU at D-2 status from 1992 through 1995.  Rather, he merely reiterated his position that the CDCR had "erroneously miscalculated" his credits.

Petitioner's argument that his EPRD was miscalculated ultimately fails because his credit calculation process did not include the recalculation of his EPRD subsequent to the rules violations, re-classification of his work group status and imposed SHU terms from 1992 through 1995.  Cal. Penal Code § 2932(e); Cal. Code Regs. tit. 15, § 3043(c)(5)(B).  California Penal Code § 2932 provides that credit "may be denied or lost."  (Id.)  This language clearly indicates the CDCR's discretion to refuse to consider credits that have not yet been earned.  (Id.)  Because Petitioner's rule violations fell within the provision of California Penal Code § 2933.6, he was barred from earning credits during his time in the SHU.

Upon examining the calculation of the time credits after Petitioner's SHU confinement from 1992 through 1995, the Court DENIES Petitioner's claim for relief, based on the facts explained in the Director's Level Appeal Decision dated May 17, 1996, which concluded that his EPRD was April 10, 2004.

Given the absence of any support for his allegations, it cannot be said that the denial of Petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

**United States District Court**
For the Northern District of California

proceedings."  28 U.S.C. § 2254(e)(2).  Moreover, the state court's summary rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1)(2).

Accordingly, Petitioner is not entitled to the writ on his due process claim based on a miscalculation of his EPRD after his SHU confinement from 1992 through 1995.

b.    EPRD After SHU Confinement in 1996

(1)  Background

Petitioner next claims that his due process rights were violated when the CDCR miscalculated his EPRD after his SHU confinement in 1996.  Petitioner submits documentation from High Desert Prison to support his allegations.  (Pet'r Ex. G.)

A review of Petitioner's exhibits indicates that he used the prison appeal process to challenge the recalculation of his EPRD after his SHU confinement in 1996.  Petitioner alleged that his EPRD calculation was improperly computed because prison officials neglected to take into account certain good time credits allegedly forfeited, in violation of his constitutional rights.  (Pet'r Ex. G, Memorandum, appeal log no. HDSP-A-96-05581, dated September 15, 1996.)

In the February 21, 1997 Director's Level Appeal Decision, the reviewing officer granted Petitioner a Computation Review Hearing. (Pet'r Ex. G, Director's Level Appeal Decision, log no. 96-07054, dated Feb. 21, 1997.)  On July 29, 1997, Petitioner appeared before

30

the ICC for review of his placement in SHU and credit restoration pursuant to the Director's Level Appeal Decision.  On December 23, 1997, a second committee hearing was held.  The ICC memorandum stated:

> Phillips appeared before C-FAC UCC for Program Review. Case factors were reviewed this date during personal Unit Classification Committee for consideration of restoration of forfeited credits.  Upon review this Committee acts to restore a total of 90 days credit for CDC-115, Log #FD-97-03-0064 dated 3/17/97.

(Id. CDC-128G dated December 23, 1997.)[14]  Petitioner was successful insofar as 180 days of credits were restored.

The Computation Review Hearing was held on January 13, 1998. Petitioner's main concern at this hearing was that the mandates for the 1996 credit restoration were not applied by the case record manager, rendering his EPRD incorrect.  (Pet'r Ex. I, Computation Review Hearing, B.D. Chastain, Corr. Case Rec. Manager, dated January 13, 1998.)

(2)  Analysis

The Court has undertaken an independent examination of the entire record for 1996 and has found that Petitioner provides no factual support for his conclusory allegations that the CDCR failed to comply with the mandates of his 1996 credit restoration. Contrary to Petitioner's contention, the record shows that his file was audited on April 9, 1997 and December 8, 1997 to determine why

_____

[14] The record also indicates that a thirty day credit restoration was made for January 30, 1998; a sixty one day credit restoration was made for January 30, 1999; a fifteen day credit restoration was made for August 8, 1999; and a ninety day credit restoration was made for March 7, 2001.  (Pet'r Ex. K, Classification - Credit Restoration, dated October 11, 2001.)

his EPRD changed from 2002 to 2004.  The Computation Review Hearing on January 13, 1998, indicates that Petitioner was indeed granted credit restoration after his file was audited and after the committee hearings because his EPRD changed from June 22, 2004 to May 11, 2002.

Moreover, Petitioner earned no custody credit and was later deprived of conduct credits as punishment for subsequent behavior and confinement to the SHU.  In addition, the LSS forms submitted by Petitioner, purportedly to establish CDCR's "errors of miscalculations of sentence and confirmation of discrepancies," do not conflict with the calculations displayed in the exhibits submitted by Respondent.  (Pet'r Ex. J, 1996 LSS Forms.)  Both the CDCR's Calculation Worksheets and the LSS forms reflect an EPRD of 2002 based on credits applied through July, 1996.  These documents simply do not support Petitioner's claim that his EPRD was miscalculated.

As noted, Petitioner's EPRD was <u>estimated</u> at May 11, 2002. The rules for calculating worktime credit provide that an inmate's EPRD is projected each time there is a change in credit-earning status.  Cal. Penal Code § 2932(e); Cal. Code Regs. tit. 15, § 3043 (c)(5).  Thus, Petitioner's May 11, 2002 EPRD was only an estimated or prospective date, which was subject to change should any subsequent violation come within the provisions of California Penal Code § 2933.6.  (Resp' Ex. B, Calculation Worksheet, sample 24.)

The Court finds that there is no merit to Petitioner's claim that his right to due process was violated by the CDCR's alleged miscalculation of his EPRD after his SHU confinement in 1996.  The

United States District Court
For the Northern District of California

Court DENIES Petitioner's claim for relief, based on the facts explained in the February 21, 1997 Director's Level Appeal Decision and the January 13, 1998 Computation Review Hearing, during which his revised EPRD of May 11, 2002 was found to be correct.

Given the absence of any support for his allegations, it cannot be said that the denial of Petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(e)(2). Moreover, the state court's summary rejection of this claims was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)(2).

Accordingly, Petitioner is not entitled to the writ on his due process claim based on a miscalculation of credits during his SHU confinement in 1996.

            c.   EPRD After SHU Confinement During Various
                 Periods from 2001 to 2005

            (1)  Background

Petitioner alleges that his due process rights were violated when the CDCR miscalculated his EPRD after his SHU confinement during various periods from 2001 to 2005. He further alleges that the Computation Review Hearings of March 15, 2002, and any subsequent related administrative appeals and computation review hearings violated his due process.

To support his claim, Petitioner submits numerous exhibits to demonstrate his "constant and continuous attempts at trying to get

33

United States District Court
For the Northern District of California

CDCR and its employees to correct their errors of miscalculation of [his] sentence."  (Pet'r Ex. L, Traverse at 1.)

The Court examines Petitioner's claim by reviewing the facts addressed by the March 15, 2002 Computation Review Hearing and the June 27, 2002 Director's Level Appeal Decision and as well as his subsequent related appeals and computation review hearings, including the October 4, 2005 Computation Review Hearing and the October 13, 2005 Second Level Review Decision.

(2)  Analysis

Based on a review of the record, the Court finds that the flaw in Petitioner's argument is that he has overlooked the CDCR's recalculation of his EPRD upon the denial or loss of credit through disciplinary action, and upon the restoration of previously denied or lost credits at six-month intervals.  Cal. Penal Code § 2932 (e); Cal. Code Regs. tit. 15, § 3043 (c)(5)(B).

Applying California Penal Code § 2933, California courts have held that inmates who are serving their determinate prison sentences may earn prison conduct credits to shorten the period of incarceration.  People v. Cooper, 27 Cal. 4th 38, 40 (2002); Cal. Penal Code § 2933 (worktime credits).  However, California courts have also held that a disciplinary loss of credits may be applied against credits that have been earned and those that have yet to be earned.  People v. Johnson, 120 Cal. App. 3d 808, 813-814, (1981); People v. Zuniga, 108 Cal. App. 3d 739, 743-744, (1980); In re Walrath, 106 Cal. App. 3d 426, 431 (1980); In re Cowen, 27 Cal.2d 637, 640 (1946).

Here, Petitioner was found to have committed multiple CDC-115

United States District Court
For the Northern District of California

violations from 2001 to 2005.  Therefore, he was confined in the SHU and classified as a D-2 status inmate for purposes of worktime credits at different periods during that time frame.  Petitioner's suggested calculation pursuant to California Penal Code § 2933 is unavailing because it does not take into consideration the CDCR's administrative duties under California Penal Code § 2933 with respect to inmates, like Petitioner, who come within the provision of California Penal Code § 2933.6(b)(3)-(4).  Because the EPRD acts as an incentive for inmates to participate in work programs pursuant to California Penal Code § 2933, any change in their classification impacts the EPRD and their attempts to earn any worktime/goodtime credits in the future.

The Court finds that there is no merit to Petitioner's claim that his right to due process was violated by the CDCR's alleged miscalculation of his EPRD after his SHU confinement during various periods from 2001 to 2005.  The Court DENIES Petitioner's claim for relief, based on the facts explained in the June 27, 2002 Director's Level Appeal Decision, the October 13, 2005 Second Level Appeal Response, as well as the March 15, 2002 and October 4, 2005 Computation Review Hearings, which verified that his CRD was September 28, 2007.[15]

Accordingly, Petitioner is not entitled to the writ on his due process claim based on a miscalculation of his EPRD after his SHU confinement during various periods from 2001 to 2005.

---

[15] While the October 4, 2005 Computation Review Hearing does not mention his EPRD, the record shows that Petitioner's EPRD was August 12, 2007.

United States District Court
For the Northern District of California

2.   Inaccurate Worktime Credit Claim

Petitioner alleges that he did not receive accurate worktime credits for a period of almost twelve years when he had worked for twenty-eight months.

Contrary to Petitioner's assumption, as discussed above, California has not created a protected liberty interest in earning credits pursuant to California Penal Code § 2933.

Petitioner's claim that the CDCR's denial of worktime credits violated his state constitutional rights is not cognizable in a federal habeas action, because generally, issues of state law are not cognizable on federal habeas. Estelle, 502 U.S. at 67 ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Nor does the Constitution guarantee good-time credit for satisfactory behavior while in prison. Wolff, 418 U.S. at 557.

Further, the record shows that Petitioner was awarded half-time work credits, i.e., one day of credit for each two days served. (Resp't Ex. B, Calculation Worksheets; Traverse Ex. M, Second Level Appeal Decision dated October 13, 2005.) Petitioner's subsequent violations and re-assignments to D-1 and D-2 status during the almost twelve-year period when he worked for twenty-eight months left him subject to restrictions imposed by the California penal system. See Wolff, 418 U.S. at 556. The record

36

shows that the State followed the "minimum due process appropriate to the circumstances to ensure that [Petitioner's] liberty [was] not arbitrarily abrogated." <u>Haygood</u>, 769 F.2d at 1355.

The state court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1)(2).  Further, Petitioner has not demonstrated that the state court's denial of this claim "resulted in a decision that was based on an unreasonable determination of the facts in light the evidence presented in the state court proceedings." 28 U.S.C. § 2254(e)(2).

Accordingly, Petitioner is not entitled to the writ on this due process claim based on a denial of worktime credit.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  All pending motions are TERMINATED.  The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 9/20/07

_CLAUDIA WILKEN_
CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

PHILLIPS,

               Plaintiff,

   v.

MCGRATH et al,

               Defendant.

Case Number: CV04-02975 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 20, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Brian G. Walsh
Office of the Attorney General
455 Golden Gate, 12th Floor
San Francisco, CA 94102-7004

Regonald D. Phillips E-40142
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532

Dated: September 20, 2007

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk